UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS BRIM,

       Plaintiff,                                Hon. Janet T. Neff

v.                                                                     Case No. 1:13-CV-989

DOUGLAS WELTON, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Welton's Motion for Summary Judgment. (Dkt. #112). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On October 11, 2012, Plaintiff was transferred to the Bellamy Creek Correctional Facility (IBC). Later that day, Plaintiff was approached by two individuals, one of whom was a prisoner named Gonzales, a member of the Insane Spanish Cobras (ISC) gang. Gonzales told Plaintiff that "if he was looking for any problems then he would get it there." Gonzales then stated that "they could fight now and get it over with," to which Plaintiff responded that "he don't want no problems, he was just trying to go home."

The next morning, Friday, October 12, 2012, Plaintiff spoke with Corrections Officer Sherry Alexander. Plaintiff told Alexander that in 2010 and 2011 he was "working with the F.B.I."

during which time he provided information about ISC gang members. Plaintiff told Alexander that "his life could be in danger or if people found out he was hear (sic) with Gonzales they would tell him to stabb (sic) or hurt this person by all means." Plaintiff told Alexander that he had been assaulted by gang members while incarcerated at other facilities. Alexander told Plaintiff that there "was nothing she could do [until] Monday when both inspectors came back."

On October 16, 2012, Plaintiff spoke with Inspector Douglas Welton who informed Plaintiff that he would "get him transferred to another prison soon." Welton instructed Plaintiff to avoid Gonzales until a transfer could be accomplished. Welton further instructed Plaintiff that if he felt unsafe "he could always ask for protection."

On an unspecified subsequent date, "Gonzales and his members" attempted to assault Plaintiff. After this incident, Plaintiff telephoned his mother and informed her "what was going on." Plaintiff's mother telephoned Sherry Alexander the following day and related what happened to Plaintiff. When Alexander asked Plaintiff why he did not report the matter directly to her, Plaintiff responded that when he previously reported such things to her "she don't do a thing." Gonzales subsequently told Plaintiff "they was going to get him." On January 11, 2013, Gonzales assaulted Plaintiff, striking him in the face "over and over." Defendant Welton later told Plaintiff "he knew it coming he just don't know when." On January 30, 2013, Plaintiff was transferred to a different correctional facility.

Plaintiff initiated the present action on September 9, 2013, against Sherry Alexander and Douglas Welton. Plaintiff has not articulated the nature of his claims, but the Court has interpreted Plaintiff's allegations as asserting an Eighth Amendment claim based upon Defendants' alleged failure to protect him from harm. Plaintiff's claims against Defendant Alexander have since been dismissed. Defendant Welton now moves for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

To prevail on his claim that Defendant Welton failed to protect him, Plaintiff must establish that Defendant was deliberately indifferent to "a substantial risk of serious harm" to Plaintiff. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that Defendant Welton acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

Defendants Welton and Alexander previously moved for summary judgment on Plaintiff's failure to protect claims. The undersigned recommended that Defendants' previous motion for summary judgment be granted in part and denied in part, a recommendation which was adopted by the Honorable Janet T. Neff. (Dkt. #72, 76).[1] The only "new" evidence Defendant Welton has submitted in support of the present motion is an updated version of the affidavit he previously submitted. The Court will analyze Defendant's motion by incorporating its previous analysis of this issue and then articulate why Defendant's updated affidavit is insufficient to merit the requested relief. As the Court previously articulated:

---

[1] Plaintiff's claims against Defendant Alexander were dismissed on the ground that Plaintiff failed to properly exhaust his administrative remedies. Defendants' motion was otherwise denied.

In support of their motion for summary judgment, Defendants have each submitted affidavits. Defendant Welton asserts in his affidavit that "[a]t no time did Plaintiff tell me that his life was in danger, nor did Plaintiff request protection from me." (Dkt. #52, Exhibit D). Welton further states that "Plaintiff never told me that he needed to be kept away from Prisoner Gonzales." (Dkt. #52, Exhibit D). In her affidavit, Defendant Alexander asserts that "[a]t no time did Plaintiff tell me that his life was in danger, nor did Plaintiff request protection from me." (Dkt. #55).

In response to the present motion, Plaintiff has submitted an affidavit in which he asserts that on November 30, 2012, he spoke with Defendant Alexander, informing her that he was "in danger" and "needed help." (Dkt. #56, Exhibit 13). Specifically, Plaintiff told Alexander that he needed "protection" from Gonzales and "his gang members." (Dkt. #56, Exhibit 13). Plaintiff continued to request protection from Alexander who responded by doing nothing. (Dkt. #56, Exhibit 13). Plaintiff asserts that he later spoke with Defendant Welton. (Dkt. #56, Exhibit 13). Plaintiff informed Welton that he was "in danger" from Gonzales and wanted "protection" and to be moved to another facility. (Dkt. #56, Exhibit 13). Plaintiff has also submitted an affidavit executed by his mother, Annie Brim, who asserts that she reported to "Alexander" that Plaintiff was experiencing "problems with other inmates" and required "protection." (Dkt. #56, Exhibit 6). Plaintiff has also submitted medical records indicating that he was assaulted on January 11, 2013. (Dkt. #56, Exhibit 12). That Plaintiff was assaulted on this date by another prisoner[2] is confirmed by video evidence submitted by Defendants. (Dkt. #52, Exhibit B). Defendants' argument that the video somehow supports their position, however, is unpersuasive.

Defendants assert in their pleadings that the video evidence demonstrates that Plaintiff "walked past his own cell to Gonzalez's (sic) cell, placed himself in close proximity to Gonzalez (sic), and began to argue with Gonzalez (sic)." (Dkt. #52 at Page ID#302). Defendants further assert that "Plaintiff instigated the confrontation that turned into a physical incident." (Dkt. #52 at Page ID#302). The video begins with an inmate (presumably Plaintiff) walking down a hallway after which he is confronted by a prisoner (presumably Gonzales) who assaults Plaintiff. While Plaintiff walks past several cells before this encounter, there is no evidence in the record that any of the cells in question was Plaintiff's cell. Moreover, even if it is assumed that Plaintiff did, in fact, walk past his own cell such hardly justifies the conclusion that Plaintiff somehow

---

[2] Defendants appear to concede that the inmate who assaulted Plaintiff was, in fact, Gonzales.

> initiated the incident in question. A reasonable interpretation of the video is that Gonzales initiated contact with Plaintiff, immediately after which he viciously assaulted Plaintiff who offered no resistance. The fact that Plaintiff did not immediately run in the other direction upon seeing Gonzales in the hallway is not inconsistent with Plaintiff's assertion that he required - and requested - protection from Gonzales. Moreover, Gonzales' actions in the video certainly appear to support Plaintiff's assertion that such protection was necessary.
>
> Given the evidence submitted, Defendants have failed to demonstrate the absence of a genuine issue of material fact regarding these claims. Specifically, the evidence before the Court reveals genuine disputes regarding whether Defendants were aware that Plaintiff's safety was threatened and whether Defendants acted reasonably in response thereto. Accordingly, summary judgment for Defendants is not appropriate. Likewise, Defendants' request for qualified immunity must be rejected because no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Greene*, 361 F.3d at 294.

(Dkt. #72 at 5-7).

In support of the present motion, Defendant Welton has submitted an updated affidavit containing two new assertions which are as follows:

> 5. Protection requests are often addressed by a prisoner's Assistant Resident Unit Supervisor (ARUS). Also, Plaintiff could have requested protection from many other MDOC employees assigned to cover his unit.
>
> 6. Furthermore, despite my ability to initiate the protection process at the request of a prisoner, the Security Classification Committee (SCC) makes the final determination concerning protective custody issues. I do not have the authority to unilaterally place an individual in protective custody.

(Dkt. #113, Exhibit A).

Neither of these assertions advance Defendant's cause. First, whether Plaintiff *could* have sought help from somebody else is not particularly relevant. Instead, the question is whether Defendant Welton was aware that Plaintiff faced a risk of serious harm and failed to reasonably respond thereto. As articulated herein, there exist genuine factual disputes on these issues. Likewise, whether Defendant Welton possess the authority to unilaterally assign a prisoner to protective custody is not particularly relevant. Defendant has not established that placement in protective custody is the only reasonable manner by which a prisoner such as Plaintiff can be protected from violence by another prisoner. Likewise, Defendant has not demonstrated that the length of time between Plaintiff's alleged request for protection and the assault by Gonzales was insufficient to secure Plaintiff's placement in protective custody.

In sum, Defendant Welton has failed to establish the absence of a genuine issue of material fact regarding Plaintiff's failure to protect claim. As discussed herein, the evidence indicates that there exist genuine disputes regarding whether Defendant was aware that Plaintiff's safety was threatened and whether Defendant acted reasonably in response thereto. Summary judgment, therefore, is not warranted. Likewise, Defendant's renewed request for qualified immunity is without merit as no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendant Welton's Motion for Summary Judgment</u>, (Dkt. #112), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 15, 2016 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge